STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24CV019930-400

| | |
|---|---|
| CARTER BEAN and KARLEIGH ZMIKLY,<br><br>    Plaintiff,<br><br>v.<br><br>CAN-AM®, BRP US, INC., BRP, INC., and BRP US SERVICES, LLC.<br><br>    Defendants. | **COMPLAINT**<br>**[Jury Trial Demanded]** |

NOW COME Plaintiffs, through their respective counsel, complaining of Defendants, and allege and say as follows:

## PARTIES, JURISDICTION & VENUE

1.      Plaintiff CARTER BEAN is a resident of Guilford County, State of North Carolina.

2.      Plaintiff KARLEIGH ZMIKLY is a resident of Guilford County, State of North Carolina.

3.      Defendant CAN-AM® is a wholly owned subsidiary of BRP US, Inc., and has been actively conducting regular and systematic business in the State of North Carolina during all relevant time periods.

4.      Defendant BRP US, Inc., is a foreign corporation registered with the North Carolina Secretary of State and bearing a SOSID of 0598415.  At all relevant times, BRP US, Inc., actively conducted regular and systematic business in the State of North Carolina.

5.      Defendant BRP, INC., is a foreign corporation that is not registered with the North Carolina Secretary of State.  At all relevant times, BRP, Inc. actively conducted regular and systematic business in the State of North Carolina.

6.      Defendant BRP US SERVICES, LLC., is a foreign limited liability corporation actively conducting regular and systematic business in the State of North Carolina during all relevant time periods.

7.      At all times relevant, Defendant BRP US, Inc. and Defendant BRP US Services, LLC have been and are registered as active to conduct business in North Carolina.

8. At all times relevant, Defendant BRP US, Inc. has been controlled and operated by corporate executives of BOMBARDIER RECREATIONAL PRODUCTS and BRP, Inc.

9. At all times relevant, Defendants BRP US, Inc., BRP, Inc., BRP US SERVICES, LLC, BOMBARDIER RECREATIONAL PRODUCTS, INC, AND DEFENDANT CAN-AM have been responsible for the design, manufacture, and importation and/or distribution of Can-Am Maverick vehicles throughout the United States, including to and within the State of North Carolina.

10. At all times relevant, Defendant BRP US, INC., Defendant BRP, INC., Defendant BOMBARDIER RECREATIONAL PRODUCTS, INC., and Defendant CAN-AM, in addition to being importers and distributors of the Can-Am Maverick, were also sellers of the Can-Am Maverick X-3X being used by Plaintiffs at the time of their catastrophic injuries.

11. The current registered agent for BRP US, INC. and BRP US SERVICES, LLC in North Carolina is C.T. Corporation System at 160 Mine Lake Court, Suite 200, Raleigh, North Carolina, 27615-6417 in Wake County, North Carolina.

12. CAN-AM® may be served with process via BRP US, Inc.

13. BRP, Inc. may be served with process via the Hague Service Convention.

14. At all times relevant, based upon information and belief, all of the above described BRP entities and CAN-AM® shared decision-making control, marketing, importation, and distribution and selling activities of the Can-Am Maverick X-3X being used by Plaintiffs at the time of their catastrophic injuries.

15. This is a products liability, breach of warranties, unfair and deceptive trade practices, and common law negligence action.

16. This Court has jurisdiction over the parties and the subject matter of this action.

17. Venue is proper.

18. Plaintiffs are "claimants" as that term is defined in all applicable statues.

19. Defendants are each a "seller" as that term is defined in all applicable statutes.

## FACTS COMMON TO ALL CLAIMS

20. In on or about late November of 2021, Plaintiff CARTER BEAN was issued title to the 2020 Can-Am Maverick X-3X side by side off-road vehicle (hereafter ORV), which is the subject of this action, after purchasing the Maverick X-3X from a

2

private person who had purchased the Maverick X-3X new from a Can-Am retailer located in Macomb County, Michigan.

21. On April 3, 2022, Plaintiffs CARTER BEAN and KARLEIGH ZMIKLY were operating/riding the subject Can-Am X-3X ORV in a careful and prudent manner.

22. On the same date and time, the Maverick X-3X in which Plaintiffs were occupants encountered an earthen berm while traveling at a low speed.

23. Immediately after encountering the earthen berm, the Maverick X-3X overturned, landing on the driver's side.

24. Fuel began leaking onto heated engine components after the Maverick overturned onto the driver's side, which fuel ignited and engulfed the Maverick in fire.

25. Before Plaintiff CARTER BEAN could extricate himself from the Maverick, he suffered severe and catastrophic burns and other injuries, including but not limited to the following:

   a.  Full thickness burn of the face and eyes
   b.  Burn injuries to bilateral hands
   c.  Cicatricial ectropion of lower eyelids of bilateral eyes
   d.  Full thickness burn of the right superior helix
   e.  Scarring
   f.  Tethering hypertrophic scarring around the nose and eyes
   g.  Eyelid retraction
   h.  Loss of eyelash line
   i.  Left eye medial canthal cicatricial webbing
   j.  Severe scar reaction of anterior eyelid
   k.  Full thickness skin graft of upper and lower bilateral eyelids release of ectropion tarsorrhaphy using skin from neck
   l.  Full thickness skin graft of the right lower eyelid and right upper eyelid, with cartilage graft to the right lower eye
   m.  Full thickness skin graft to left lower eyelid
   n.  Cartilage graft to the left lower eyelid
   o.  Swelling of bilateral eyelids
   p.  Kenalog injection to eight facial scar locations
   q.  K-10 injections, K-40 injections
   r.  Bilateral eyes sutured closed
   s.  Inability to close eyes
   t.  Inability to open mouth wide or smile
   u.  Dry eyes
   v.  Z-plasty incisions of the left side of nose
   w.  Overgrowth of scar tissue
   x.  Chemosis
   y.  Intralesional steroid injections to periorbital

3

z. Burn debridement surgery
aa. Multiple surgical procedures
bb. Nausea
cc. Vomiting
dd. Anxiety
ee. Depression
ff. PTSD
gg. Conscious pain and suffering
hh. Emotional distress
ii. Loss of enjoyment of life
jj. Medical and medical-related expenses
kk. Wage loss and other economic damages
ll. Emotional distress
mm. Pharmaceutical expenses
nn. Other ordinary, incidental and consequential damages as would be generally anticipated to arise under the circumstances

26. Plaintiff KARLEIGH ZMIKLY was not able to quickly extricate herself from the passenger side seat and suffered severe and catastrophic burn and other injuries, including but not limited to the following:

a. Severe and catastrophic burns to the face, head, neck, chest, left arm, hands, left leg, and resulting sequelae and symptoms associated therewith
b. Full skin grafting of face with abdominal donor tissue
c. Emergency grafting of left and right hand using donor tissue
d. Partial amputation of middle, ring and pinky finger on the left hand
e. De-webbing procedure on left hand
f. Ligament release of pinky and ring finger on left hand
g. Left thigh skin grafting with right thigh donor tissue
h. Skin grafting of left arm
i. Escharotomies of left arm and right and left hands
j. Left and right hand skin grafting with right thigh donor tissue
k. Chest skin grafting with right leg donor tissue
l. Neck skin grafting with right leg donor tissue
m. Full eye and eyelid skin graft procedures with cervicis donor tissue
n. Multiple facial recell procedures
o. Skin grafting of left eye with right ear donor tissue
p. Skin flap surgery to upper lip with right forearm donor tissue
q. Skin flap surgery to upper lip/chin with right leg donor tissue
r. Upper lip revision surgery
s. Future reconstruction of the chin and nose
t. Anxiety
u. Depression
v. Acute delirium
w. PTSD
x. Acute Stress disorder

4

y. Conscious pain and suffering
z. Emotional distress
aa. Loss of enjoyment of life
bb. Medical and medical-related expenses
cc. Wage loss and other economic damages
dd. Emotional distress
ee. Pharmaceutical expenses
ff. Other ordinary, incidental and consequential damages as would be generally anticipated to arise under the circumstances

27. The fire resulted from a negligently designed fuel rail line that failed during intended and foreseeable uses of the Can-Am Maverick X-3X by Plaintiffs.

28. Defendants were responsible for the design, manufacture, and marketing for sale of the Can-Am Maverick X-3X, including the fuel rail line that failed, during the intended and foreseeable use of the subject Maverick..

29. At all times relevant, after Plaintiff Carter Bean's purchase of the subject 2020 Can-Am Maverick X-3X, Plaintiffs' use of the subject Maverick was reasonable, foreseeable, and prudent.

30. Defendants failed to warn end users about the fire hazards associated with the particular fuel rail line in the Can-Am Maverick X-3X model, even though they collectively had actual knowledge of the serious safety and burn hazards that accompanies any use of the Can Am Maverick X-3X model.

31. At all times after its manufacture and distribution into the United States, the subject Can-Am Maverick X-3X was inherently dangerous and unsafe for its intended use and was not merchantable.

32. The reasons that the subject Can-Am Maverick X-3X was inherently dangerous and/or unsafe for its intended use include, but are not limited to, the following:

a. The fuel line is unsupported, not attached to the engine;

b. The unattached fuel line creates undue stress on the connection to the fuel rail;

c. The unattached fuel line allows engine vibration to negatively affect the retention of the fuel line to the fuel rail;

d. The clip which attaches the chassis fuel line to the fuel rail is defective;

e. The plastic clip that attaches the chassis fuel line to the fuel rail becomes brittle with heat cycles and is not used in mainstream automotive/motorcycle fuel injection fuel supply lines;

5

f. The two-tab clip is not sufficient for long-term fuel line retention and thus increases the risk of fuel leakage and fire;

g. The fuel rail line as designed in the subject Maverick X-3X is known to leak fuel and cause fire;

h. For other and additional reasons to be proven during discovery and the trial of this matter;

i. The above reasons will be referred to collectively as the "Defects".

33. Upon information and belief, the Defendants, their agents, employees and representatives each had actual and/or constructive knowledge and notice of the Defects before the subject Maverick X-3X was imported and distributed throughout the United States and before Plaintiff CARTER BEAN obtained ownership.

34. At all times relevant, Defendants continued to market, distribute, and sell the 2020 Can-Am Maverick X-3X throughout the United States and continued to represent that the subject 2020 Can-Am Maverick X-3X was safe, fit, appropriate, and merchantable for intended and foreseeable uses.

34. The subject Can-Am Maverick X-3X was not sold to the original purchaser or to Plaintiff Carter Bean in a sealed container.

35. The subject Can-Am Maverick X-3X had been previously removed from its packaging by agents, employees, or representatives of Defendants.

36. At all points of sale, there were no verbal or written warnings, instructions, or other cautions with regard to known incidences of fuel line leakage or vehicle fire risks during intended, proper, and/or foreseeable uses of the Can-Am Maverick X-3X.

37. When sold to the original purchaser and then to Plaintiff Carter Bean, the subject Can-Am X-3X was inherently and unreasonably dangerous and unsafe for the use for which it was marketed, sold, and intended.

38. At no time did the original purchaser of the subject Can-Am X-3X make any material modifications, alterations, or cause damage to the subject Can-Am Maverick X-3X after purchase and prior to the sale to Plaintiff Carter Bean.

39. At all times relevant, Defendants' marketing, distribution, and sale of the subject Can-Am Maverick X-3X was a breach of express and implied warranties.

40. Had the defects not been present in the subject Can-Am Maverick X-3X, more likely than not the fuel leak, fire, and the resulting injuries to Plaintiffs would have been avoided.

6

41. Had Plaintiffs been reasonably warned, instructed, and/or cautioned as to the defects in the subject Maverick X-3X, Plaintiff would not have used the product and their injuries would have been avoided.

42. Prior to the importation, distribution, marketing, and sale of the subject Can-Am Maverick X-3X, the Defendants, their agents, employees and/or representatives each had the time and opportunity to test, inspect, and ultimately change the negligent and dangerous design of the fuel lien and fuel rail before it was used by Plaintiffs.

43. Prior to the original sale of the subject Can-Am Maverick X-3X, each and every instrumentality causing injury to Plaintiffs was collectively under the exclusive and/or superior control and/or management of Defendants.

44. At all times relevant, Defendants had superior means for determining that the subject Can-Am Maverick X-3X was inherently unsafe and not suitable for ordinary and intended uses prior to the incident alleged in this Complaint.

45. Plaintiffs were not in any way negligent in the use of the subject Can-Am Maverick X-3X.

46. The negligence of Defendants, described herein, was/were a proximate cause of severe property damage and catastrophic personal and physical injuries and other harms and losses suffered by Plaintiffs, thereby making all Defendants jointly and severally responsible for and liable to Plaintiffs for all harm, injuries, losses, and other such compensatory damages so caused in an amount exceeding this Court's jurisdictional minimums.

47. In the alternative to the claims for relief described herein, Plaintiffs plead the doctrine of res ipsa loquitur and allege that the injuries and other harms and losses suffered by Plaintiffs were the result of an occurrence that does not ordinarily happen in the absence of negligence on the part of the designer, manufacturer and/or distributor of the subject Can-Am Maverick X-3X.

48. Further and in the alternative, to the claims for relief described herein, Plaintiffs allege that the Defendants, jointly, owed a duty to Plaintiffs to ensure that all of its agents, employees, representatives, distributors, and retail sales personnel were properly hired, trained, and supervised.

49. Defendants, on their own as well as through the ratified conduct of its agents, employees, representatives, distributors, and retail sale partners, negligently breached the aforementioned duties by, inter alia:

    a. Failing to inform its agents, employees, representatives, distributors, and retail sales partners of the defects in the fuel line and fuel rail in the subject Can-Am Maverick X-3X.

7

b. Failing to instruct its agents, employees, representatives, distributors, and retail sales partners to warn of the defects.

c. Failing to properly supervise to ensure that defects and effective warnings of the risk of injury and harm in ordinary and intended uses of the subject Can-Am Maverick X-3X as result of the defects were included with all product information documents, owner's manuals, packaging, and on the machine itself for every sale of the subject Can-Am Maverick X-3X.

50. The Defendants' negligent breaches of their duties as set forth above was/were direct and proximate cause(s) of the catastrophic personal and physical injuries, and other harms and losses suffered by Plaintiffs, thereby making Defendants responsible for and liable to Plaintiffs for all harms, injuries, and losses, and other compensatory damages in amounts exceeding the jurisdictional minimum for this Honorable Court.

## FIRST CLAIM FOR RELIEF

51. Plaintiffs realleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the preceding paragraphs of this Complaint.

52. The breaches of duty by Defendants, described herein were the proximate cause of severe physical injury, and other harms and losses suffered by Plaintiffs, thereby making each and every Defendant jointly and severally responsible for and liable to Plaintiffs for all harms, losses, injuries, and other such compensatory damages so caused in an amount exceeding the minimum jurisdictional limits of this court.

## SECOND CLAIM FOR RELIEF: BREACH OF IMPLIED WARRANTY

53. Plaintiffs realleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the preceding paragraphs of this Complaint.

54. By way of further, additional, alternative pleading, Plaintiff states the following claim for relief.

55. Defendants' sale of an unreasonably dangerous and unsafe vehicle built for normal consumer use is a breach of the implied warranty of merchantability as set forth in N.C.G.S. §25-2-314 and all other applicable statutes.

56. Defendants' breach of the implied warranty of merchantability pursuant to N.C.G.S. §25-2-314 and all other applicable statutes was the proximate causes of severe physical injury, and other harms and losses suffered by Plaintiffs, thereby making each and every Defendant jointly and severally responsible for and liable to Plaintiffs for all harms, losses, injuries, and other such compensatory damages so caused in an amount exceeding the minimum jurisdictional limits of this court.

8

57. Further, each and every Defendant impliedly warranted and represented that the subject vehicle was of merchantable quality.

58. Plaintiffs reasonably relied upon each and every said implied warranty.

59. As an unreasonably dangerous product with inherently unsafe propensities, the subject vehicle was not of merchantable quality, but was instead sold to Plaintiffs with dangerous defects making it susceptible to catch fire when operated under normal and/or foreseeable conditions.

60. Each and every Defendant further failed to give specific instruction, warning, or other caution to Plaintiffs in order to notify them of the defects and their danger.

61. The defective condition and lack of warning constitutes a further breach of each and every implied warranty made by each and every Defendant.

62. The facts as set forth in this Complaint give each and every Defendant seasonable notice of the manufacturing defect of the subject vehicle and the breach of their implied warranties.

63. The breach of the implied warranty of merchantability by Defendants, described herein and pursuant to N.C.G.S. §25-2-314 and all other applicable statutes, was the proximate cause of severe physical injury, and other harms and losses suffered by Plaintiffs, thereby making each and every Defendant jointly and severally responsible for and liable to Plaintiffs for all harms, losses, injuries, and other such compensatory damages so caused in an amount exceeding the minimum jurisdictional limits of this court.

**THIRD CLAIM FOR RELIEF: NEGLIGENT DESIGN, MANUFACTURE, TESTING, PROMOTION, DISTRIBUTION & FAILURE TO WARN**

64. Plaintiffs realleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the preceding paragraphs of this Complaint.

65. By way of further, additional, alternative pleading, Plaintiff states the following claim for relief.

66. Defendants owed a duty to Plaintiffs to design, manufacture and distribute the subject vehicle in a reasonable and prudent manner so as to avoid unreasonable risk of injury to Plaintiffs and others.

67. Defendants further owed a duty to Plaintiffs upon notice of inherent or unreasonably dangerous propensities of the subject vehicle to warn of same.

68. Defendants negligently breached the aforementioned duties by:

9

a. Designing, manufacturing, promoting and choosing to deliver a vehicle for sale that, despite proper maintenance and a well cared for condition, could catch fire when put to normal and/or foreseeable use;

b. Designing, manufacturing, promoting and choosing to deliver a vehicle for sale that had multiple flaws in its fuel and exhaust systems that were likely to cause fire in the vehicle under foreseeable and/or normal use;

c. Designing, manufacturing, promoting and choosing to deliver a vehicle for sale that, due to design flaws, was both likely to catch fire and expose its occupants to life-threatening conditions;

d. Choosing to avoid a recall, retrofit, or other post-sale warning after Defendants knew, or should have known, that the model vehicle, its fuel, system and components, were defective and unreasonably dangerous;

e. Choosing to avoid adequate and sufficient testing and inspection of the subject vehicle and other similar vehicles;

f. Designing, manufacturing, promoting and choosing to deliver a vehicle for sale that was likely to catch fire under normal and/or foreseeable use and yet had no system to allow occupants to easily exit from their restraints;

g. Designing, manufacturing, promoting and choosing to deliver a vehicle for sale that was likely to catch fire under normal and/or foreseeable use and yet had no on board fire suppression systems or other fire mitigation systems installed;

h. Choosing to design, manufacture, promote and deliver a vehicle for sale that had not been adequately tested to ensure that they would be reasonably safe from fire events under normal operating conditions;

i. Defendants were negligent in their design, manufacture, promotion and delivery of the subject vehicle in other ways to be proven through discovery and at trial.

69. The negligent design, production, manufacture, promotion, delivery, testing, inspection and failure to warn described herein was the proximate cause of severe physical injury, and other harms and losses suffered by Plaintiffs, thereby making Defendants jointly and severally responsible for and liable to Plaintiffs for all harms, losses, injuries, and other such compensatory damages so caused in an amount exceeding the minimum jurisdictional limits of this court.

**THIRD CLAIM FOR RELIEF: UNFAIR & DECEPTIVE TRADE PRACTICES**

10

70. Plaintiffs realleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the preceding paragraphs of this Complaint.

71. The sale for value of an unreasonably dangerous vehicle to the general public without notice of the dangerous and unsafe propensities inherent within the vehicle and further while using explicit statements indicating the vehicle is in fact roadworthy and generally safe in order to induce the purchase is an unfair, deceptive, and misleading sales practice under N.C.G.S. §75-1 *et seq* and all other applicable statutes.

72. Defendants are collectively sellers of vehicles to the general public in the State of North Carolina, they have manufacturing facilities domiciled in the State of North Carolina for the purpose of producing vehicles like the subject vehicle, and the transaction where the subject vehicle was sold was within commerce as that term is defined in N.C.G.S. §75-1 *et seq.* and all other applicable statutes.

73. Plaintiffs are now domiciled in North Carolina, their medical bills and expenses are in part, paid by the State of North Carolina, and as a result the subject incident has directly damaged residents of the State of North Carolina.

74. Defendants sold an unreasonably dangerous product without any notice of its dangerous propensities to Plaintiffs, and further Defendants sold said product while informing Plaintiffs that it was in fact safe, of good quality, and generally roadworthy, all the while knowing, in fact, of the dangerous defects of the vehicle.

75. The unfair and deceptive trade practices described herein were the proximate cause of severe physical injury, and other harms and losses suffered by Plaintiffs, thereby making each and every Defendant jointly and severally responsible for and liable to Plaintiffs for all harms, losses, injuries, and other such compensatory damages so caused in an amount exceeding the minimum jurisdictional limits of this court.

76. Plaintiffs are further entitled to collect treble damages and attorney's fees expended during the course of this litigation pursuant to N.C.G.S. §75-1 *et seq.*

11

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek relief from and judgment against each and every Defendant as follows:

1. A trial by jury on all triable issues;

2. Compensatory damages with the highest rate of interest allowed under the law;

3. Punitive damages should discovery reveal willful and wanton conduct by Defendants;

4. The costs of this action;

5. All such further relief as the Court may deem just and proper.

This 5th day of September, 2024.

CR LEGAL TEAM, LLP

D. Hardison Wood (NC Bar ID: 34909)
2400 Freeman Mill Road
Greensboro, North Carolina 27406
Telephone: 336/333-9899
Facsimile: 800/537-6021
Email: dhwood@crlegalteam.com
*Counsel for Plaintiffs*

12